**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **DONALD DEE LESTER, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:10-00380** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered March 23, 2010 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 12 and 15.) and Plaintiff's Reply. (Document No. 16.)

The Plaintiff, Donald Dee Lester, Jr. (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on July 19, 2006 (protective filing date), alleging disability as of February 22, 2006, due to "[h]eart problems, heart attacks, lower back problems, right hand injury, carpal tunnel in both hands, head injury, stroke, left leg injury, left knee problems, mental problems, depression, anxiety, hernias, and anger management problems." (Tr. at 8, 149-52, 153-57, 179, 184.)  The claims were denied initially and upon reconsideration. (Tr. at 63-67, 68-72, 78-80, 81-83.) On June 19, 2007, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 84-85.) An initial

hearing was held on April 21, 2008, before the Honorable Valerie A. Bawolek, and a supplemental hearing was held on November 13, 2008. (Tr. at 15-42, 43-58.) By decision dated January 20, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 8-14.) The ALJ's decision became the final decision of the Commissioner on January 27, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on March 23, 2010, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the

claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas

(activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, February 22, 2006. (Tr. at 10, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following medically determinable impairments: "non-obstructive coronary artery disease; degenerative disc disease involving the lumbar spine; major depressive disorder; and generalized anxiety disorder." (Tr. at 10, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 10, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work as follows:

> [T]he [C]laimant cannot work at jobs which require climbing ladders, ropes or scaffolds; the [C]laimant must avoid temperature extremes, heights, vibrations, and occupational hazards; and the [C]laimant is restricted to jobs which do not require balancing, stooping, crouching, crawling, kneeling, or climbing stairs or ramps on more than an occasional basis.

(Tr. at 10-11, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 13, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a cleaner, cashier, laundry worker, and sales attendant, at the light level of exertion. (Tr. at 13-14,

Finding No. 9.) On this basis, benefits were denied. (Tr. at 14, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on February 7, 1960, and was 48 years old at the time of the supplemental administrative hearing, November 13, 2008. (Tr. at 13, 18, 149, 153.) Claimant has a high school education. (Tr. at 13, 183, 189.) In the past, he worked as a roof bolter in the coal mining industry. (Tr. at 13, 55-56, 184-86, 191-97.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and summarizes it herein in relation to Claimant's arguments regarding his mental impairments.

Claimant sustained a severe closed head injury as the result of a motorcycle accident, on February 7, 2001. (Tr. at 22, 353-54.) On February 24, 2001, Dr. Terry C. Borel, M.D., was consulted to examine Claimant due to periods of agitation while hospitalized in the neurosurgical intensive care unit. (Tr. at 353.) Claimant was given Ativan as needed for his agitation. (Id.) Dr. Borel observed that Claimant exhibited a fairly marked flatness of affect and apathy. (Id.) He noted that Claimant primarily complained of memory difficulties and that he was depressed. (Id.) Dr. Borel noted that Claimant had a flat affect, was preoccupied and depressed, and appeared slightly irritable and angry. (Id.) Dr. Borel opined that Claimant was very discouraged by his physical condition and was having difficulty adjusting to being hospitalized. (Id.) He diagnosed organic mental disorder secondary to cerebral trauma and depression not otherwise specified. (Id.) Dr. Borel advised that Claimant should take Ativan as needed for periods of agitation and difficulty sleeping, and start a trial of an antidepressant. (Id.)

On May 16, 2006, Claimant was referred by the West Virginia Department of Health and Human Resources to M. Khalid Hasan, M.D., a board certified psychiatrist, for a psychiatric evaluation. (Tr. at 500-02.) Claimant reported that he was unable to work due to depression, inability to sleep and rest, and chronic pain in his back, left leg, and shoulder. (Tr. at 500.) Claimant said that he was moody and anxious, depressed, and had nightmares from a 2001 motorcycle accident and a mining accident. (Id.) His mother was killed in a motor vehicle accident in November, 2005, which aggravated his condition. (Id.) He had trouble sleeping, could not concentrate, felt useless and worthless, wanted to hurt someone but no one in particular, could not do things he wanted to do, and had become extremely animated and agitated. (Id.) Claimant was then taking Vicodin and Valium, as prescribed by his family doctor. (Tr. at 501.) Mental status exam revealed clear but non-spontaneous speech, a dysphoric mood, full orientation, no evidence of psychosis, intact cognition, appropriate abstract thinking, average intelligence, and fair judgment, insight, and problem solving ability. (Id.)

Dr. Hasan diagnosed major depression, recurrent, moderate to moderately severe in nature with mixed affective state and intermittent explosive disorder; adjustment disorder with anxious and depressed mood second to physical illness and situational factors; an he assessed a GAF of 50.[2] (Tr. at 502.) He recommended psychiatric treatment and psychological testing, and noted that Claimant was capable of handling his financial affairs. (Id.)

Dr. Jeff Harlow, Ph.D., a licensed psychologist, completed a form Psychiatric Review Technique on August 18, 2006, on which he opined that Claimant's depressive and adjustment disorders were non-severe impairments. (Tr. at 503-16.) He further opined that Claimant's mental impairments resulted in mild restrictions of activities of daily living and maintaining concentration, persistence, or pace; and no difficulties in maintaining social functioning or episodes of decompensation of extended duration. (Tr. at 513.) Dr. Harlow considered Claimant as partially credible because his statements about functional capacities were inconsistent with Dr. Hasan's clinical results. (Tr. at 515.)

Claimant was examined on May 8, 2007, by Elizabeth Durham, M.A., at the request of the Social Security Administration. (Tr. at 534-38.) Claimant reported sleeping difficulties, a poor appetite, crying episodes, and a dysphoric mood the past two weeks. (Tr. at 535.) Mental status exam revealed that Claimant's mood was dysphoric and his affect was restricted, his insight was fair, and that all other aspects of Claimant's mental status were within normal limits. (Tr. at 536.) In particular, Claimant's social functioning, concentration, persistence, and pace all were within normal limits. (Tr. at 535-36.) Ms. Durham diagnosed major depressive disorder, recurrent, moderate and generalized anxiety disorder. (Tr. at 536.)

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 41-50 indicates that the person has "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

Debra Lilly, Ph.D., completed a form Psychiatric Review Technique on May 23, 2007, on which she also opined that Claimant's major depressive and generalized anxiety disorders were non-severe impairments. (Tr. at 539-52.) She further opined that Claimant's mental impairments resulted in only mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation of extended duration. (Tr. at 549.) Dr. Lilly found that Claimant was not considered credible regarding the severity of his mental impairments and noted that his memory and social functioning were within normal limits and that his complaints centered around his physical status. (Tr. at 551.)

Ms. Durham conducted a further mental status examination on May 20, 2008, after Claimant's initial administrative hearing. (Tr. at 650-57.) Claimant's complaints and Ms. Durham's mental status exam and diagnoses were unchanged from May 8, 2007. (Tr. at 650-52.) Results of an MMPI-II were invalid due to an F Scale T score above 100, but results on the WMS-II were valid. (Tr. at 652.)

Ms. Durham also completed a form Medical Source Statement of Ability to do Work-Related Activities (Mental), on which she opined that Claimant had extreme limitations in his ability to understand, remember, and carry out complex instructions, and make judgments on complex, work-related decisions. (Tr. at 655-57.) She assessed marked limitations in his ability to make judgments on simple work-related decisions and respond appropriately to usual work situations and to changes in a routine work setting. (Id.) Finally, Ms. Durham assessed moderate limitations in Claimant's ability to understand, remember, and carry out simple instructions; and interact appropriately with the public, supervisors, and co-workers. (Id.)

Dr. William Phelps, a licensed psychologist, testified at the supplemental administrative hearing that Dr. Hasan's restrictive opinion was not supported by the evidence of record. (Tr. at 51-52.) He testified that the Wechsler memory testing conducted by Ms. Durham revealed no significant memory deficits. (Tr. at 52-53, 55.) He gave his opinion that Claimant's mental impairments resulted

9

in no more than mild limitations in activities of daily living, concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 53.) He also opined that none of Claimant's mental impairments met or equaled a listing impairment. (Tr. at 51.) Dr. Phelps further opined that Claimant's social functioning was normal. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's mental residual functional capacity, as she assessed no mental limitations. (Document No. 12 at 7-12.) Claimant advances two reasons for the ALJ's flawed mental RFC assessment. (Id.) First, Claimant asserts that the ALJ erred in relying on the opinion of non-examining physicians over the consistent opinions of examining physicians. (Id. at 8-9.) Second, Claimant asserts that the ALJ's RFC assessment is inconsistent with her conclusion that Claimant's depressive and generalized anxiety disorders were severe impairments, which by definition implies significant limitations. (Id. at 9.) Claimant notes that he underwent four mental evaluations by Drs. Borel and Hasan and Ms. Durham, and that their opinions consistently indicated that he suffered from at least moderate depression. (Id. at 9-12.) Dr. Boggess's testimony indicates moderate limitations in concentration, persistence, pace, and social functioning. (Id. at 11.) Nevertheless, Claimant asserts that the ALJ improperly credited the opinions of the non-examining psychologist, medical expert Dr. William Phelps, and the two state reviewing psychologists, Drs. Lilly and Harlow, when their opinions contradicted every examining medical source. (Id.)

In response, the Commissioner asserts that Claimant essentially alleges that the ALJ erred in not assessing specific mental limitations arising from Ms. Durham's diagnoses. (Document No. 15 at 10-14.) The Commissioner asserts, however, that diagnoses alone are insufficient to find a condition disabling. (Id. at 10.) He notes that Ms. Durham's diagnoses were based on Claimant's self reports of

depression and frequent anxiety and are not supported by her mental status exam. (Id.) Though Ms. Durham assessed certain marked and moderate limitations on work-related functions, the ALJ was not required to accept her opinion as it was inconsistent with her clinical evaluation. (Id. at 11.) The Commissioner further asserts that Claimant made similar reports to Dr. Hasan, but that the statements are questionable given his unreliable statements to physicians regarding heart attacks and stent placement, a stroke, and the extent of his brain injury. (Id. at 12.) Dr. Phelps testified that Dr. Hasan's GAF of 50 was inconsistent with the evidence of record and that Claimant continued to be diagnosed with depression and anxiety, though he had never been treated for those diagnoses. (Id. at 12-13.) Furthermore, the Commissioner asserts that the ALJ was not required to have included mental limitations in the hypothetical question to the VE because the record demonstrated that Claimant worked six years after his motorcycle accident unimpeded by any mental limitations. (Id. at 13.) He notes that testing showed Claimant also was prone to symptom magnification and lingering. (Id.) Accordingly, the Commissioner asserts that the ALJ properly assessed Claimant's mental RFC. (Id. at 13-14.)

In Reply, Claimant asserts that because the ALJ found that Claimant suffered from severe mental impairments, she was required to address in her RFC assessment the basic mental work functions of understanding, remembering, and carrying out simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. (Document No. 16 at 2-4.) Claimant cites to an opinion issued by District Judge Bailey in the Northern District of West Virginia, Mauzy v. Astrue, Civil Action No. 2:08-cv-00075 (N.D. W.Va. Mar. 30, 2010), for the proposition that an ALJ may not define a claimant's mental RFC in broad categories, such as unskilled work. (Id. at 3-4.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence

11

because the ALJ erred in assessing Claimant's credibility. (Document No. 12 at 12-13.) Claimant specifically asserts that the ALJ failed to make an explicit determination as to whether Claimant suffered a medically determinable impairment that could reasonably cause his alleged symptoms. (Id. at 13.) Claimant further asserts that the ALJ failed to make any credibility finding regarding Claimant's testimony that he experienced constant problems with his left leg going out on him and back pain three or four times per week. (Id.) Furthermore, the Claimant asserts that the ALJ failed to give any reasons for her implicitly rejecting Claimant's testimony regarding his ability to stand and walk. (Id.)

The Commissioner asserts in response that the ALJ's finding that Claimant's "degenerative disc condition involving the lumbar spine" and "non-obstructive coronary artery disease" did not limit his ability to function to the degree alleged by Claimant, is supported by substantial evidence. (Document No. 15 at 14-16.) The Commissioner asserts that the ALJ considered Claimant's activities of daily living and treatment other than medication, and accommodated Claimant's subjective complaints of pain to the extent that she limited him to light work with certain limitations. (Id. at 14-15.) Furthermore, the Commissioner notes that the record was replete with Claimant's misstatements or exaggerations of his medical condition, "which cast significant doubt on the reliability of [Claimant's] subjective complaints." (Id. at 15.)

In Reply, Claimant asserts that the Commissioner missed the point of his argument and states that he is asserting that the ALJ "did not explicitly consider [Claimant's] testimony **at all**, properly or otherwise." (Emphasis in original) (Document No. 16 at 1.) Claimant states: "While the Defendant Commissioner's attorneys clearly found Mr. Lester not credible, the Administrative Law Judge's decision contains no such conclusion." (Id.) He asserts that the ALJ failed to make an explicit threshold finding whether Claimant suffered from a medically determinable impairment that would

cause his symptoms and that her finding that Claimant suffers from severe impairments is insufficient. (Id. at 2.)

Analysis.

1. Mental RFC.

Claimant first alleges that the ALJ erred in crediting the opinions of non-examining medical sources over the opinions of the examining medical sources. At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2009). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or

13

> equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2009).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2009). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p

14

states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2009). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an

15

opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2009). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ acknowledged and summarized the evaluations and opinions of Dr. Hasan, Ms.

Durham, Dr. Phelps, and the state agency reviewing consultants. (Tr. at 11-13.) She credited the testimony of Dr. Phelps as having been consistent with the evidence of record. (Tr. at 12.) The ALJ noted Dr. Phelps's testimony that the evidence of record did "not support such restrictive functional limitations as those suggested by a GAF of 50[,]" as assessed by Dr. Hasan. (Id.) In support of her decision, the ALJ noted that Claimant neither had received mental health treatment, nor was hospitalized or received crisis intervention for his mental impairments. (Tr. at 13.) Thus, the ALJ adopted the opinions of the state agency medical sources that Claimant's symptomotology was no more than mildly interfering with his activities of daily living, social functioning, concentration, persistence, or pace. (Id.)

Claimant challenges the ALJ's decision to discredit the opinions of the only examining medical sources, Drs. Borel and Hasan, and Ms. Durham. The ALJ determined that their opinions were inconsistent with the evidence of record. (Tr. at 12-13.) A review of the evidence, as discussed above, indicates that both Dr. Hasan and Ms. Durham based their diagnoses on Claimant's subjective complaints. With the exception of noting that Claimant's affect "was of some dysphoria" and that his judgment and insight were "fair," Dr. Hasan's mental status exam was normal. (Tr. at 501.) Yet, Dr. Hasan, who examined Claimant on only the one occasion, assessed a GAF of 50, which was indicative of serious symptoms. (Tr. at 502.) Likewise, Ms. Durham, who conducted two examinations of Claimant, reported in her diagnostic rationale that her diagnoses were based on Claimant's self-reports. (Tr. at 536, 652-53.) The results of Ms. Durham's memory testing, the WMS-III, revealed no significant deficits in memory, as testified to by Dr. Phelps. (Tr. at 52,55, 652.) Dr. Phelps and the two state agency reviewing medical consultants, Drs. Harlow and Lilly, indicated that at most, the evidence of record resulted in only mild limitations in Claimant's maintaining activities of daily living, social functioning, concentration, persistence, or pace. The ALJ found that the opinions of these three

17

medical consultants was consistent with the overall evidence of record, which consisted of a lack of treatment and hospitalizations and essentially normal mental status exams by the only three medical examiners, Drs. Borel and Hasan, and Ms. Durham. Accordingly, the undersigned finds that the ALJ's decision to give greater weight to the opinions of Drs. Phelps, Harlow, and Lilly is supported by substantial evidence of record.

Claimant further challenges the ALJ's failure to assess any mental-related functional limitation in her RFC assessment. As stated above, the ALJ found at step two of the sequential analysis that Claimant's major depressive and generalized anxiety disorders were severe impairments. (Tr. at 10.) At step four, however, the ALJ did not provide any specific work-related mental functions in her RFC as required by SSR 96-8p. The ALJ did not consider limits on Claimant's ability to perform basic mental work functions such as understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. The Commissioner asserts that the ALJ limited Claimant to the mental demands of unskilled work. The undersigned finds, however, that such a broad categorization of Claimant's mental functional ability is insufficient in light of the requirements of SSR 96-8p. See Mauzy, Civil Action No. 2:08-cv-00075 at 13-14 (S.D. W.Va. Mar. 30, 2010). Accordingly, the undersigned finds that the ALJ's mental RFC assessment is not supported by substantial evidence of record and recommends that this matter be remanded for further consideration of Claimant's mental functional abilities.

2. Pain and Credibility Assessment.

Claimant also alleges that the ALJ erred in assessing his credibility. A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to

produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2009); SSR 96-7p;

See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then

the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's

ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical

condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of

pain] must be considered by the Secretary, and these complaints may not be rejected merely because

the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918,

919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the

absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent

that alleged functional limitations are reasonably consistent with objective medical and other evidence.

20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2009).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior
> work record, your statements about your symptoms, evidence submitted by your
> treating, examining, or consulting physician or psychologist, and observations by our
> employees and other persons.  . . .  Factors relevant to your symptoms, such as pain,
> which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other
> symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you
> take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief
> of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms
> (e.g., lying flat on your back, standing for 15 or 20 minutes every hour,

sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2009).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.

20

20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In view of error it found in the ALJ's pain analysis, the Craig Court remanded, stating its reasoning as follows:

> [T]he ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. . . . Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only, then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

Craig, 76 F.3d at 596. Relying upon this language in Craig, this Court remanded in Hill v. Commissioner of Social Security, 49 F.Supp.2d 865, 869 (S.D. W.Va. 1999) (Hallinan, J.), for consideration of the threshold issue in the pain analysis over the Commissioner's contention that it would be a waste of judicial and administrative resources because Mr. Hill would still be found not

disabled. Judge Hallinan stated as follows:

> For the Court to make a determination when reviewing whether the ALJ's decision is supported by substantial evidence, the Court expects those below to conduct a full and intensive review of the record. Justice and fairness demands nothing less. To say that the results would be the same upon a second, more comprehensive review and explanation of the record, and therefore should not be done at all, would be to deny the Claimant his right to a fair decision, and in addition, deny the Court of a fully developed record of review.

Hill, 49 F.Supp.2d at 870. In Arnold v. Barnhart, Civil Action No. 1:04-0422 (S.D. W.Va. Sept. 29, 2005), this Court further held that Craig mandates "that an ALJ must make an *explicit* determination that a claimant has or has not proven an underlying medical impairment that could cause the pain alleged by the claimant." Id. at 11.

> [T]he ALJ's failure to expressly reach a conclusion regarding the first part of the pain disability test, the threshold question of whether a claimant has "an underlying medical impairment that could reasonably be capable of causing the pain alleged," constitutes a failure to apply the correct legal standard in determining that a claimant is not disabled by pain.

Id. at 14. See also Bradley v. Barnhart, 463 F.Supp.2d 577, 581 - 582 (S.D. W.Va. 2006) (remanding for the ALJ's failure to consider the threshold question of Craig prior to considering the credibility of her subjective allegations).

In the instant case, the ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility (Tr. at 11.), but failed specifically to note the two-step process in considering Claimant's symptoms. The ALJ proceeded to summarize some of the medical and opinion evidence (Tr. at 11-13.), but failed to address specifically Claimant's subjective complaints and symptoms.  The ALJ failed explicitly to address the first prong of the two-step pain and credibility analysis. Consequently, the ALJ failed to determine at step one of the pain and credibility analysis whether Claimant had any underlying impairments which reasonably could be expected to produce the pain or symptoms alleged. As this Court stated in Bradley, "if it is determined

22

that the claimant has demonstrated by objective medical evidence an impairment or impairments capable of causing the degree and type of pain he alleges, the supporting findings to that effect may shed some light on the credibility of his subjective claims of disabling pain." <u>Bradley</u>, 463 F.Supp.2d at 582. Based upon the foregoing, the Court finds that the ALJ failed to conduct the two-step pain and credibility assessment and recommends that this matter be remanded for further administrative proceedings.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), **VACATE** the final decision of the Commissioner, **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v.</u>

Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 19, 2011.

R. Clarke VanDervort
United States Magistrate Judge