# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

DONALD DEE LESTER, JR.,

        Plaintiff,

v.                                             CIVIL ACTION NO. 5:10-cv-00380

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

      This is an appeal seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act (SSA), 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered March 23, 2010 (Docket 4), this action was referred to United States Magistrate Judge R. Clarke VanDervort for proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings (Docket 12), Defendant's Motion for Judgment on the Pleadings (Docket 15) and Plaintiff's Reply (Docket 16). On August 19, 2011, Magistrate Judge VanDervort submitted his Proposed Findings and Recommendation ("PF&R") (Docket 18).

I.

**PROCEDURAL HISTORY AND STANDARD OF REVIEW**

Plaintiff, Donald Dee Lester, Jr., filed applications for DIB and SSI on July 19, 2006 (protective filing date), alleging disability as of February 22, 2006, due to "[h]eart problems, heart attacks, lower back problems, right hand injury, carpal tunnel in both hands, head injury, stroke, left leg injury, left knee problems, mental problems, depression, anxiety, hernias, and anger management problems." (Tr. at 8, 149-52, 153-57, 179, 184.) The claims were denied initially and upon reconsideration. (Tr. at 63-67, 68-72, 78-80, 81-83.)

On June 19, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 84-85). The initial hearing was held on April 21, 2008, before ALJ Valerie A. Bawolek, and a supplemental hearing was held on November 13, 2008. (Tr. at 15-42, 43-58.) By decision dated January 20, 2009, the ALJ determined that Plaintiff was not entitled to DIB and SSI benefits. (Tr. at 8-14.) The ALJ's decision became final on January 27, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) Plaintiff appealed the final decision to this Court on March 23, 2010, pursuant to 42 U.S.C. § 405(g). (Docket 2). On August 19, 2011, the Magistrate Judge submitted proposed findings and recommended that the Court (1) grant Plaintiff's motion; (2) deny Defendant's motion; (3) vacate the final decision of the Commissioner; (4) remand this matter for further proceedings consistent with the PF&R pursuant to the fourth sentence of 42 U.S.C. § 405 (g); and (5) dismiss this matter from the Court's docket. (Docket 18 at 23.)

The Federal Magistrates Act requires a district court to make a de novo review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); see also Fed.R.Civ.P. 72(b). Conversely, a district court

is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir.1983) (holding that district courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006). A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objections were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Coinciding with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See Mathews v. Weber*, 423 U.S. 261, 271 (1976); *see also Raddatz*, 447 U.S. at 683.

## II.

### APPLICABLE SOCIAL SECURITY ACT LAW

Disability under the SSA is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). The Social Security Administration

utilizes a five-step inquiry to determine eligibility for social security benefits. The steps are followed in order, and if a claimant is determined not to be disabled at one step, the evaluation proceeds to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005). The PF&R correctly sets forth the five-step inquiry as follows:

> The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

(Docket 18 at 2-3.)

### III.

### STANDARD OF REVIEW

Section 405(g) of the SSA provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2006). This language limits the Court's role in reviewing the ALJ's decision to determining whether his findings are supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453,

1456 (4th Cir. 1990) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

"Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). Substantial evidence has also been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hays*, 907 F.2d at 1456 (citing *Richardson*, 402 U.S. at 401). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971). When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

### IV.

### ANALYSIS

*A. Plaintiff's Medical Records*

Plaintiff sustained a severe closed head injury as the result of a motorcycle accident on February 7, 2001. (Tr. at 22, 73, 353-54.) However, Plaintiff testified that he had "eight inches of brain hanging out the back of [his] head, they give (sic) me 24 hours to live." (Tr. at 23.) This claim was not supported by the medical records, nor was Plaintiff in a comma as he indicated. (Tr. at 30.) Plaintiff suggests these erroneous reports may have been a result of memory loss from his closed head injury. (Docket 12 at 2.) Shortly after the accident, Plaintiff was diagnosed, by Dr. Terry C. Borel, M.D., with organic mental disorder secondary to cerebral trauma and depression. (Tr. at 353.)

5

Dr. Borel noted that Plaintiff exhibited a fairly marked flatness of affect and apathy. *Id*. Additionally, Dr. Borel indicated Plaintiff primarily complained of memory difficulties and that he was depressed. *Id*.

On May 16, 2006, Plaintiff was referred by the West Virginia Department of Health and Human Resources (WVDHHR) to M. Khalid Hasan, M.D., a board certified psychiatrist, for a psychiatric evaluation. (Tr. at 500-02.) Plaintiff indicated to Dr. Hasan that he was unable to work due to depression, inability to sleep and rest, and chronic pain in his back, left leg and shoulder. (Tr. at 500.) Plaintiff stated that much of his depression stemmed from nightmares of the 2001 motorcycle accident. *Id*. It was also alleged that Plaintiff's depression was aggravated by the sudden death of his mother in a car wreck in November of 2005. *Id*. Dr. Hasan diagnosed major depression, recurrent, moderate to moderately severe in nature with mixed affective state and intermittent explosive disorder. (Tr. at 501-02.) Dr. Hasan further diagnosed Plaintiff with adjustment disorder with anxious and depressed mood second to physical illness and situational factors. *Id*. Finally, Dr. Hasan found Plaintiff's Global Assessment of Functioning ("GAF") to be 50. (Tr. at 502.) This was the only occasion Plaintiff was seen by Dr. Hasan. *Id*.

On August 18, 2006, Dr. Jeff Harlow, Ph.D., a licensed psychologist, concluded that Plaintiff's depressive and adjustment disorders were non-severe impairments. (Tr. at 503-16.) Plaintiff's Psychiatric Review Technique ("PRT") indicated mental impairments resulting in mild restrictions of activities of daily living and maintaining concentration, persistence, or pace. (Tr. 513.) Dr. Harlow's PRT found Plaintiff had no difficulties in maintaining social functioning and no episodes of decompensation of extended duration. *Id*. Dr. Harlow considered Plaintiff as only

partially credible because of the inconsistencies between his statements about functional capacities and Dr. Hasan's clinical evaluation. (Tr. at 515.)

On May 8, 2007, Plaintiff was examined by Elizabeth Durham, M.A.. Plaintiff's mental status exam indicated that his mood was dysphoric and his affect was restricted, his insight was fair, and the remaining aspects of his mental status were within normal limits. Ms. Durham diagnosed major depressive disorder, recurrent, moderate and generalized anxiety disorder. (Tr. at 536.)

On May 23, 2007, Plaintiff was examined by Debra Lilly, Ph.D. (Tr. 539-52.) The PRT performed by Dr. Lilly indicated that Plaintiff's major depressive and generalized anxiety disorders were non-severe impairments. (Tr. 551.) Dr. Lilly concluded that Plaintiff was not credible with regard to the alleged severity of mental impairments and that his complaints centered around his physical status. *Id.* Dr. Lilly indicated that Plaintiff's memory and social functioning were within normal limits. *Id.*

On May 20, 2008, Plaintiff was re-examined by Ms. Durham. Again, she diagnosed major depressive disorder, recurrent, moderate and generalized anxiety disorder. (Tr. 652.) Ms. Durham conducted a valid Wechsler memory test (WMS-III). Dr. William Phelps, a licensed psychologist, testified this test revealed that Plaintiff had no significant memory deficits. (Tr. at 52-53, 55.)

According to Ms. Durham, Plaintiff had extreme limitations in his ability to understand, remember, and carry out complex instructions, as well as make judgments on complex work related decisions. (Tr. at 655-57.) Ms. Durham further concluded that Plaintiff had marked limitation in his ability to make judgments on simple work related decisions and respond appropriately to usual work situations and to changes in a routine work setting. *Id.* At the supplemental administrative hearing, Dr. Phelps testified that Plaintiff's mental impairments indicated no more than mild

7

limitations in activities of daily living, concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 53.)

### *B. ALJ Findings of Fact and Conclusions of Law*

The ALJ determined that Plaintiff met the first inquiry because "[t]here is no evidence of substantial gainful activity after February 22, 2006, the alleged onset date of disability." (Tr. at 10, Finding No. 2.) Under the second inquiry, the ALJ found Plaintiff had the "following severe impairments: non-obstructive coronary artery disease; degenerative disc disease involving the lumbar spine; major depressive disorder; and generalized anxiety disorder." (Tr.at 10, Finding No. 3.) With respect to the third inquiry, the ALJ determined that Plaintiff's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix, which is not disputed by either party. (Tr. at 10, Finding No. 4.) Next, the ALJ determined Plaintiff's residual function capacity ("RFC"). The ALJ concluded that Plaintiff retained the RFC to perform light work subject to several limitations. (Tr. at 10-11, Finding No. 5). Those limitations included the following:

> [Plaintiff] cannot work at jobs which require climbing ladders, ropes or scaffolds; the [Plaintiff] must avoid temperature extremes, heights, vibrations, and occupational hazards; and the [Plaintiff] is restricted to jobs which do not require balancing, stooping, crouching, crawling, kneeling, or climbing stairs or ramps on more than an occasional basis.

*Id.*

Under the fourth inquiry, the ALJ found that Plaintiff could not return to "his past relevant work as a roof bolter operator in the coal mining industry." (Tr. at 13, Finding No. 6.) However, the ALJ concluded that Plaintiff could perform jobs such as a cleaner, cashier, laundry worker, and sales attendant, at a light level of exertion, on the basis of the vocational expert's testimony. (Tr. at

13-14, Finding No. 9.) Finally, the ALJ determined the Plaintiff was not disabled. (Tr. at 14, Finding No. 10.)

*C. Plaintiff and Defendant's Arguments for Judgment on the Pleadings*

Plaintiff moves for Judgment on the pleadings on two grounds. First, he asserts that the ALJ's determination regarding Plaintiff's mental capacity for work is not supported by substantial evidence. (Docket 12 at 2.) Essentially, Plaintiff argues that the ALJ improperly credited the opinions of the two non-examining psychologists, Drs. Lilly and Harlow, and medical expert Dr. Phelps, when their opinions contradicted the examining medical source testimony of Drs. Borel, Hasan, and Ms. Durham. (*Id*. at 9-12.) Second, Plaintiff argues that the ALJ failed to comply with the two step process an ALJ must use in consideration of subjective testimony of pain and other symptoms as required by *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). (Docket 12 at 2.)

Defendant asserts there was ample evidence in the record for the ALJ not to accept Plaintiff's subjective complaints because Plaintiff's numerous misstatements and exaggerations cast significant doubt on his subjective complaints. (Docket 15 at 15-16 Too, Defendant argues that the ALJ's determination of mental demands of unskilled work is supported by the record. (Docket 15 at 1.) Specifically, Defendant claims the record shows Plaintiff worked for six years after his 2001 motorcycle accident without any mental limitations, which Defendant contends was supported by the psychological testing that revealed no memory or any other work-related mental deficiencies. (Docket 15 at 1.)[1] Further, Defendant contends that the ALJ properly assessed the mental RFC

---

[1] The period between Plaintiff's motorcycle accident and the last day he worked was actually just over five years. Plaintiff's motorcycle accident took place on February 7, 2001, and his last day working was February 22, 2006. (Tr. at 11, 30.)

because of evidence of symptom magnification and exaggeration by Plaintiff. (Docket 15 at 15). In sum, Defendant claims the ALJ's decisions are supported by substantial evidence. *Id.*

### D. Magistrate Judge's Proposed Finding and Recommendation

#### 1. Mental Residual Functional Capacity

The ALJ assessed Plaintiff's RFC and concluded that he retained the RFC to perform light work subject to several limitations. (Tr. at 10-11, Finding No. 5). Those limitations included the following:

> [Plaintiff] cannot work at jobs which require climbing ladders, ropes or scaffolds; the [Plaintiff] must avoid temperature extremes, heights, vibrations, and occupational hazards; and the [Plaintiff] is restricted to jobs which do not require balancing, stooping, crouching, crawling, kneeling, or climbing stairs or ramps on more than an occasional basis.

*Id.*

The Magistrate Judge first addressed the ALJ's decision to credit and give greater weight to the testimony of non-examining physicians, Drs. Phelps, Harlow, and Lilly, instead of the treating physicians, Drs. Borel, Hasan, and Ms. Durham. (Docket 18 at 13-18.) The Magistrate Judge found that the ALJ's decision to give greater weight to the opinions of Drs. Phelps, Harlow, and Lilly was supported by the substantial evidence of record. (Docket 18 at 18.) Neither party objects to this finding. Accordingly, the Court finds that the ALJ's decision to give greater weight to the opinions of the non-examining physicians is supported by the substantial evidence of record.

The Magistrate Judge next addressed Plaintiff's challenge to the ALJ's failure to assess any mental-related functional limitations despite the ALJ's step-two finding of major depressive disorder and generalized anxiety disorder, both of which significantly limit Plaintiff's ability to perform basic work functions. ( Tr. at 10.) The Magistrate Judge found that the ALJ did not provide

specified work related mental functions in her RFC, which, as discussed *infra*, is required by SSR 96-8p. (Docket 18 at 18.) The ALJ did, however, limit the Plaintiff to the mental demands of unskilled work. *Id*. The Magistrate Judge concluded that "such a broad categorization of claimant's mental functional ability is insufficient in light of the requirements of SSR 96-8p." *Id*. Consequently, the Magistrate found that ALJ's mental RFC assessment was not supported by substantial evidence of record. *Id*. Accordingly, the Magistrate Judge recommends remand for further consideration of Plaintiff's mental functional abilities. *Id*.

Defendant objects to remand on the ground that the ALJ's decision to limit Plaintiff to mental demands of unskilled work is supported by substantial evidence of record. Defendant bases this argument on the fact that Plaintiff worked for six (6) years after his 2001 motorcycle accident without any mental limitations, and also argues that the decision was supported by the psychological testing that revealed no memory or any other work-related mental deficiencies. (Docket 19 at 1.)[2]

The ALJ credited the testimony of Dr. Phelps, which did not support a GAF score of 50 as assessed by Dr. Hasan, but rather supported much less restrictive functional limitation. (Tr. at 12-13.) The ALJ agreed with the State agency psychologist that Plaintiff's "mental symptomatology is not more than mildly interfering with activities of daily living, his social functions, and his ability to maintain concentration persistence, or pace." (Tr. at 13.) However, SSR 96-8P requires more. Specifically, when, as here, the ALJ determined under the second inquiry that Plaintiff had four severe impairments (two of which dealt with his mental health), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." (SSR 96-8p at point 4.) It is unsettled in the Fourth Circuit on how

---

[2] As discussed in footnote 1, actual time between accident and work stoppage was just over five years.

much written detail is needed to meet function by function analysis. *Cureton v. Astrue* 2011 WL 903032 at *16 (D.S.C. 2011); *See also Vo v. Astrue*, 518 F.Supp.2d 715 (D.S.C. 2007) (on remand instructed ALJ to explicitly discuss claimants abilities on function by function basis); *but see Mellon v. Astrue*, 2009 WL 2777653 (D.S.C. Aug.10, 2009) (ruled that specific written discussion of each function was not necessary). Further, when dealing with mental limitations of impairments such as major depressive disorder or general anxiety disorder, "nonexertional capacity must be expressed in terms of work- related functions including the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p

      Here, the ALJ does not give a function by function analysis (or any mental functional analysis, for that matter) of any of the nonexertional mental functions associated with either major depressive disorder or general anxiety disorder, but simply adopts Dr. Phelps opinion that Plaintiff's mental impairments no more than mildly interfere with activities of his daily life, his social functions, and his ability to maintain concentration persistence, or pace. SSR 96-8p requires, at the very least, some functional analysis of Plaintiff's ability for specific work-related mental functions such as Plaintiff's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p. The Court finds the ALJ's determination that Plaintiff is limited to the mental demands of unskilled work is insufficient and not substantially supported by the evidence of record. Accordingly, the Court finds this matter

should be remanded for further consideration of Plaintiff's mental functional abilities in compliance with SSR 96-8p.

### 2. Pain and Credibility Assessment

The Magistrate correctly determined a two step process is to be used to determine whether Plaintiff is disabled by pain or other symptoms. The first step requires "objective medical evidence showing the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)) (emphasis removed). If such medical impairment which could reasonably cause pain is established, then "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. "[C]laimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). An ALJ's analysis must not reject claimant's allegations of pain *solely* because it is not supported by objective medical evidence *of pain* because *only* objective medical evidence *of a condition which could cause pain is required. Craig*, 76 F.3d at 594. (emphasis added)

The Magistrate found that "the ALJ noted the requirements of the applicable law and regulations with regard to assessing pain, symptoms, and credibility (Tr. at 11.), but failed specifically to note the two step process in considering Claimant's symptoms." (Docket 18 at 22.) More specifically, the "ALJ failed explicitly to address the first prong of the two-step pain and credibility analysis." *Id.* The Magistrate relies on a case from this District which interpreted *Craig* to require an ALJ to "make an explicit determination that a claimant has or has not proven an

13

underlying medical impairment that could cause the pain alleged." *Arnold v. Barnhart*, Civil Action No. 1:04-0422, 11 (S.D. W. Va. Sept. 29, 2005). In *Arnold*, the Court went on to conclude that a "failure [of an ALJ] to expressly reach a conclusion regarding the first part of the pain disability test . . . constitutes a failure to apply the correct legal standard." *Id*. at 14. *See also Bradley v. Barnhart*, 463 F.Supp.2d 577, 581 - 582 (S.D. W. Va. 2006) (remanding for the ALJ's failure to consider the threshold question required by *Craig* prior to considering the credibility of her subjective allegations). The Magistrate found that the ALJ failed to properly conduct the two-step pain and credibility assessment and recommended that this matter be remanded for further administrative proceedings. (Docket 18 at 23.)

Defendant argues that the ALJ's decision was supported by substantial evidence of record to support the determination that Plaintiff was not disabled. (Docket 19 at 2.) Further, Defendant claims the ALJ's analysis complied with the pain and credibility assessment required by *Craig*. *Id*. Defendant contends that *Arnold* and *Bradley* overstate the *Craig* requirement. *Id*. Defendant suggests that *Craig* requires the "ALJ's decision, as a whole, must be sufficiently explicit to allow the Court to conduct a meaningful judicial review of the ALJ's two-part credibility analysis." (Docket 19 at 3.) Defendant asks this Court to reconsider the interpretation of *Craig* based on *Nelson v. Apfel* 1998 WL 879588 (4th Cir. Aug. 3, 1998) (unpublished). In *Nelson*, the Fourth Circuit upheld the ALJ's determination of threshold credibility questions despite the ALJ's failure to make an explicit finding at step one. *Nelson*, 1998 WL 879588 at *3. Specifically, *Nelson* held that the ALJ addressed the threshold question and "considered all the impairments Nelson claimed to have and, if relevant, the pain allegedly associated with the impairments." *Id.* No district court in the Fourth Circuit has adopted this unpublished opinion's relaxed interpretation of the *Craig*

14

requirements. In fact, the only district court that expressly addressed Nelson's holding, rejected the Defendant's argument based on *Nelson* in favor of the more formulaic approach taken in *Bradley. See Pittman V. Astrue,* 2008 WL 4594574 (E.D. N.C. 2008 (remanding the case for failure of the ALJ to expressly perform step-one of the pain and credibility assessment despite the ALJ's determination of severe impairments at step-two).

This Court finds a more formulaic interpretation of *Craig,* as presented in *Bradley* and *Arnold,* is best suited to protect the judicial review of an ALJ's decision on the two-step pain and credibility assessment. Here, the ALJ simply summarized the medical and opinion evidence instead of specifically addressing Plaintiff's subjective complaints and symptoms. Simply stating that the ALJ "considered all symptoms alleged by the claimant and the extent to which these symptoms can reasonably be accepted with objective medical evidence" is not sufficient. (Tr. at 11.) On remand, the ALJ must make explicit findings as to the first prong of the two-step pain and credibility analysis.

Here, unlike in *Nelson*, the ALJ also failed to make any determination as to the credibility of Plaintiff's testimony, which fails to meet step-two of the credibility assessment. An "ALJ is required to make credibility determinations-and therefore sometimes must make negative determinations-about allegations of pain or other nonexertional disabilities." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In *Hammond*, the ALJ stated "[i]n view of the objective medical evidence of record, the undersigned does not find credible the claimant's subjective symptoms including pain of a level of severity as to preclude sedentary work activity." *Id*. The ALJ did not explicitly consider or make any determination as to the credibility of Plaintiff's testimony. The ALJ must make a specific finding on the credibility of Plaintiff's subjective symptoms of pain.

Accordingly, on remand, the ALJ must also consider and make explicit findings on the second prong of the two step pain and credibility analysis.

While the ultimate outcome may very well be the same, justice and fairness demand that this Court have a more comprehensive record and explicit explanation of the ALJ's decision to give Plaintiff a fair and just review. *See Hill v. Commissioner of Social Sec.*, 49 F.Supp. 2d 865, 870 (S.D. W. Va 1999). The Court finds the ALJ failed to explicitly conduct either step of the two-step pain and credibility assessment. Accordingly, the Court finds that this matter should be remanded for further administrative proceedings.

## CONCLUSION

Based on the foregoing, the Court does hereby **ORDER** that the Magistrate Judge's *Proposed Findings and Recommendation* (Docket 18) be **ADOPTED**. The Court further **ORDERS** that *Plaintiff's Motion for Judgment on the Pleadings* (Docket 12) be **GRANTED**, that *Defendant's Motion for Judgment on the Pleadings* (Docket 15) be **DENIED**, that the ALJ's final decision be **VACATED**, and that this matter be **REMANDED** for further proceedings consistent with this memorandum opinion pursuant to the fourth sentence of 42 U.S.C. § 405(g). Lastly the Court **ORDERS** that this matter be **DISMISSED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party. ENTER: September 13, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA